UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-60074-CR-ROSENBERG

UNITED STATES OF AMERICA

v.

ALEXANDER JOHNSON,

      Defendant.

_____/

FILED by _____ D.C.

**NOV 1 2 2014**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and **ALEXANDER JOHNSON** (hereinafter referred to as the "defendant") enter into the following agreement:

1.      The defendant agrees to plead guilty to Count 1 of the Indictment which charges that he did knowingly persuade, induce, entice or coerce an individual who had not attained the age of eighteen years, that is, M.M., to engage in any sexual activity for which a person can be charged with a criminal offense, and attempted to do so, in violation of Title 18, United States Code, Sections 2422(b). The Government agrees to seek dismissal of Count 2 after sentencing.

2.      The defendant is aware that the sentence will be imposed by the court after consideration of the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the court relying in part on the results of a Pre-Sentence Investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the court may depart

from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines.  The defendant is further aware and understands that the court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence; the court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence.  Knowing these facts, the defendant understands and acknowledges that the court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw his plea solely as a result of the sentence imposed.

3.      The defendant understands and acknowledges that on Count 1 the Court must impose a mandatory minimum term of ten (10) years and may impose a statutory maximum term of imprisonment of life.  Additionally, the court may impose a term of supervised release up to life; a fine of up to two hundred fifty thousand dollars ($250,000.00); and must order restitution.

4.      The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100 will be imposed on the defendant for each count to which he is pleading guilty.  The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.  If the defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

5.      This Office reserves the right to inform the court and the probation office of all

facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background.   Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

6.     This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will file a motion requesting an additional one-level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently.   Additionally, this Office and the Defendant has jointly agreed to recommend that that this Honorable Court impose a term of imprisonment of ten (10) years.  The United States, however, will not be required to make this motion or this recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to, committing a state or federal offense, violating any term of release, or making

3

false statements or misrepresentations to any governmental entity or official.

7.      The defendant is aware that the sentence has not yet been determined by the Court. The  defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court.  The defendant understands further that any recommendation that the government makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety.  The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

8.      The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the sentence imposed in this case.   Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure or variance from the guideline range that the court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b).   However, if the United States appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be

released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that he has discussed the appeal waiver set forth in this agreement with his attorney.  The defendant further agrees, together with the United States, to request that the district court enter a specific finding that the defendant's waiver of his right to appeal the sentence to be imposed in this case was knowing and voluntary.

9.     Defendant understands that by pleading guilty, he will be required to register as a sex offender upon his release from prison as a condition of supervised release pursuant to 18 U.S.C. § 3583(d).  Defendant also understands that independent of supervised release, he will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout defendant's life.  Defendant understands that he shall keep his registration current, shall notify the state sex offender registration agency or agencies of any changes to defendant's name, place of residence, employment, or student status, or other relevant information. Defendant shall comply with requirements to periodically verify in person defendant's sex offender registration information.  Defendant understands that he will be subject to possible federal and state penalties for failure to comply with any such sex offender registration requirements.   If defendant resides in Florida following release from prison, defendant will be subject to the registration requirements of Florida State Statute 943.0435. Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon defendant's release from confinement following conviction.

10.     As a condition of supervised release, defendant shall initially register with the state sex offender registration in the state of Florida, and shall also register with the state sex offender registration agency in any state where defendant resides, is employed, works, or is a student, as directed by the Probation Officer. Defendant shall comply with all requirements of federal and state sex offender registration laws, including the requirement to update defendant's

registration information.  Defendant shall provide proof of registration to the Probation Officer within 72 hours of release from imprisonment.

      11.     This is the entire agreement and understanding between this Office and the defendant.  There are no other agreements, promises, representations, or understandings.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 11|12|14     By:

JODI ANTON
ASSISTANT UNITED STATES ATTY

Date: 11/12/14     By:

JOHN BERGENDAHL
ATTORNEY FOR DEFENDANT

Date: 11/12/14     By:

ALEXANDER JOHNSON
DEFENDANT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 14-60074-CR-ROSENBERG/HOPKINS

UNITED STATES OF AMERICA

vs.

ALEXANDER JOHNSON,

        Defendant.

_____/

FILED by _____ D.C.

NOV 1 2 2014

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

<u>AGREED FACTUAL BASIS FOR PLEA</u>

      Had this case proceeded to trial, the parties agree that the United States would have proven the following facts beyond a reasonable doubt:[1]

      On July 8, 2011, Detectives of the Boca Raton Police Department (BRPD) interviewed a witness who reported a possible ongoing relationship between a minor child and Alexander Johnson (Herein referred to as "JOHNSON").  The witness advised law enforcement that his friend, JOHNSON, told him that he has been having a relationship with a minor female (Herein referred to as "M.M.") and stated that JOHNSON and M.M. both attended a karate school in Boca Raton, where they became acquainted. JOHNSON was an adult student.  JOHNSON told the witness that he needed to get something off of his chest and asked if he could keep a secret. JOHNSON then admitted that he was, in fact, in a relationship with M.M.  JOHNSON also advised his friend that he and M.M. had a system in place which prevented M.M.'s parents from knowing they were communicating. The witness provided a recorded statement to BRPD detectives memorializing the same.

_____

[1] These are not all of the facts that the United States would have proven

1

On July 10, 2012, M.M. was interviewed by law enforcement and stated that she met JOHNSON in approximately December 2010 at the Precision Martial Arts studio in Boca Raton where JOHNSON was an older student.   M.M. was twelve (12) years old at the time and in sixth grade.   M.M. told law enforcement that she had left her poetry notebook at the dojo and JOHNSON recovered her writings and read them.   JOHNSON approached M.M. and made his initial contact with her under the guise of helping her get the poetry published.   JOHNSON gave M.M. his phone number after M.M.'s mother consented, but M.M. did not give JOHNSON her phone number.   The following week, JOHNSON approached M.M. and asked why she didn't call.   M.M. eventually called JOHNSON because she believed he could help get her published. Their conversations quickly turned away from writing and JOHNSON would ask M.M. personal questions about her sexual experiences.   JOHNSON and M.M. would converse mostly about topics which were sexual in nature, including JOHNSON telling her, "I want to bend you over and grab your hair and fuck you as hard as I can till you cum" and "I will tell you you're my lil whore and I want you to cum."   M.M. recalls JOHNSON telling her over the phone, "After you cum I will put you on your knees and grab your hair and force my dick down your throat."   JOHNSON told M.M. over the phone that he couldn't date women his own age because they were emotionally damaged.   He referred to M.M. as an "old soul."   M.M. and JOHNSON spoke on the phone three to four times per week and would also exchange frequent and numerous text messages.

M.M. recalled an incident that occurred at the dojo where she went to the back of the dojo to change into her uniform in the restroom. M.M. never before entered the dojo through the rear, but did so on this occasion because JOHNSON had texted her that she should. In addition to texting, JOHNSON spoke to M.M. about coming in through the back entrance and asked her to

2

arrive early.   On the day that M.M. complied, JOHNSON walked her into the restroom and began kissing M.M.   JOHNSON then locked the bathroom exit door as well as the door leading to the dojo.   M.M.'s mother became aware of the contact and ultimately filed an injunction on July 23, 2012 with the Circuit Court in Palm Beach County preventing JOHNSON from legally contacting M.M. JOHNSON violated the Court Ordered Injunction by contacting M.M.'s friends via text message, having them tell M.M. to contact JOHNSON, and contacting M.M. directly.

BRPD detectives interviewed JOHNSON at his residence.   JOHNSON stated he knew M.M. through martial arts and was mentoring her because she was a troubled youth.   JOHNSON told law enforcement that he did not see any issue with his behavior or contact with M.M, -- even when asked to stop contact by M.M.'s parents.   M.M. told JOHNSON that if they continued to contact each other, he could go to jail, but JOHNSON replied that he still wanted to continue contact.   JOHNSON admitted to M.M. that he knew what he was doing was wrong, but said he could not choose who he loved.

In July of 2012, BRPD detectives met with the owner of Precision Martial Arts Studio who stated that JOHNSON told him that M.M. and JOHNSON had kissed in the past. The owner did not approve of this relationship so JOHNSON told him that he would not see or call M.M. anymore.   However, one month later, the owner attended M.M.'s birthday party at her residence and saw M.M. and JOHNSON in the corner of the pool together and felt that the contact was awkward and uncomfortable.

M.M advised law enforcement that she had borrowed a classmate's phone in November of 2012 and used that phone to text message JOHNSON.   JOHNSON would return her messages within minutes and had provided M.M. with his cellular phone number, (615) 586-2905, prior to

3

being served with the injunction.  This is the number on which M.M. communicated with JOHNSON. M.M.'s school teacher provided a statement to law enforcement stating that she noticed M.M. texting on a cell phone in class, confiscated the phone, and notified the principal. The phone was then given to the school resource officer and placed into property at the Davie Police Department. M.M.'s classmate stated that he lent his cellular phone to M.M. every day for several months after M.M. told him she was grounded.   M.M. would take her classmates phone at lunch and return it at the end of the day so that she could communicate via text message with JOHNSON.

A consensual search was conducted of that phone which revealed text message conversations between JOHNSON and M.M.   Specifically, on November 15, 2012, during school hours, JOHNSON texted M.M. that he didn't want to go to jail and texted about the restraining order that M.M.'s mother put prohibiting JOHNSON from having any contact with M.M.   They then texted about JOHNSON getting a new phone to use to communicate with M.M.   During this conversation, they discussed via text message the pictures that M.M. had sent to JOHNSON. JOHNSON indicated that he deleted the photos so he would not get caught with them.

After M.M. was caught by her mother communicating with JOHNSON, JOHNSON obtained a new phone number, 615-830-6528, which he gave to M.M. The two then implemented a code that they would use prior to beginning a communication to ensure that neither law enforcement nor M.M.'s parents had control of the phone.   M.M. would text message JOHNSON with the code "*hami handachi*," which would indicate the message was coming from M.M.

In December of 2012, in the presence of law enforcement, M.M. sent a controlled text message to JOHNSON stating, "*hami handachi* goodmorning."   JOHNSON responded stating,

4

"Moring baby....I stayed up til 5 hoping to hear from u. . . Really tired. . . You feeling better today?"  M.M. then asked JOHNSON to call her.  JOHNSON responded by stating, "U know they are monitoring ur phone n will b as long as ur considered a minor.  They have a standing subpoena on all ur phn and computer records."  M.M. continued to text, asking JOHNSON to call and send her a photo.  JOHNSON then called M.M. and sent M.M. a photo. M.M. positively identified the photo as JOHNSON.  Upon conclusion of the interview, the text messages were examined and law enforcement observed a text message exchange between JOHNSON and M.M. that had been sent two days prior wherein JOHNSON graphically detailed what he wanted to do to M.M. in a sexually explicit manner, told her how badly he wanted her, and indicated that he loved her.

All of the above facts occurred within the Southern District of Florida.

The defendant and his attorney acknowledge by their signatures below that they have reviewed the stipulated facts with each other and agree with the accuracy of the facts as recited herein above.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 11/12/14                    By: _____
                                  JODI L. ANTON
                                  ASSISTANT UNITED STATES ATTORNEY

Date: 11/12/14                    By: _____
                                  JOHN BERGENDAHL
                                  ATTORNEY FOR DEFENDANT

Date: 11/12/14                    By: _____
                                  ALEXANDER JOHNSON
                                  DEFENDANT

6